## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LEE ANN HELFRICH,

       *Plaintiff,*

vs.

       Case No. 13-2620-EFM-JPO

BLUE CROSS AND BLUE SHIELD
ASSOCIATION and BLUE CROSS AND
BLUE SHIELD OF KANSAS CITY,

       *Defendants.*

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. 21) for Plaintiff Lee Ann Helfrich's petition for declaratory judgment. Helfrich seeks an order declaring that Kansas law prohibits the Defendants from requiring her to reimburse them for benefits paid under a health insurance policy issued to federal employees. The Defendants maintain that under a preemption clause in the Federal Employees Health Benefits Act, the terms of the insurance contract preempt Kansas law and that Helfrich must reimburse them $76,561.88 because she recovered $100,000 from the other driver's insurance after a car accident. The Court agrees, finding that a natural reading of the statute reveals clear congressional intent to preempt any state law that prohibits reimbursement. For the following reasons, the Court grants Defendants' Motion for Judgment on the Pleadings.

## I. Factual and Procedural Background

In 2012, Plaintiff Lee Ann Helfrich was a federal employee working as an air traffic controller in Olathe, Kansas. Helfrich was enrolled in a health insurance plan offered to federal employees. Defendant Blue Cross and Blue Shield Association is a private insurance carrier that entered into a contract with the United States Office of Personnel Management to offer health insurance to federal employees under the Federal Employees Health Benefit Act (FEHBA). The plan was administered locally by Defendant Blue Cross and Blue Shield of Kansas City.

In December 2012, Helfrich was severely injured in an automobile accident. Blue Cross paid $76,561.88—after adjustments for unrelated and additional payments—to Helfrich's health care providers for medical expenses. The other driver's insurance paid Helfrich $100,000 as part of a settlement for the other driver's policy limit. The $100,000 was deposited in a trust account held by Helfrich's counsel pending the outcome of this litigation.

Helfrich's Blue Cross health insurance plan requires that the insured reimburse Blue Cross for any benefits Blue Cross paid to treat an injury caused by a third party if the insured obtains a separate recovery in connection with the injury. Blue Cross has asserted a reimbursement right of $76,561.88 against Helfrich's recovery from the other driver's insurance. Under Kansas law, such a contractual term in an insurance policy requiring reimbursement for medical expenses is prohibited. But Blue Cross contends that the FEHBA, in 5 U.S.C. § 8902(m)(1), preempts Kansas law and that this preemption clause applies to reimbursement.

Helfrich filed a Petition for Declaratory Judgment, which was removed to this Court in December 2013. Helfrich's petition requests this Court to declare that 5 U.S.C. § 8902(m)(1) does not preempt the Kansas regulation that prohibits a reimbursement clause in an insurance contract. Additionally, Helfrich seeks a declaration that the reimbursement clause in the contract

violates Kansas public policy and is unenforceable. The Defendants filed a counterclaim, asserting that Helfrich breached her obligations under the insurance plan and seeking declaratory judgment that Helfrich is obligated to reimburse the plan for all benefits paid for the treatment of injuries and that a lien exists against Helfrich's settlement proceeds. In February 2014, Blue Cross filed a Motion for Judgment on the Pleadings (Doc. 21), which is now before this Court.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed as long as the motion is made early enough not to delay trial.[1] The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[2] So to survive a motion for judgment on the pleadings, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[3] All reasonable inferences from the pleadings are granted in favor of the non-moving party.[4] Judgment on the pleadings is appropriate when "'the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'"[5] Documents attached to the pleadings are exhibits and may be considered in deciding a Rule 12(c) motion.[6]

---

[1] FED. R. CIV. P. 12(c).

[2] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013); *KMMentor, LLC v. Knowledge Mgmt. Prof'l Soc., Inc.*, 712 F. Supp. 2d 1222, 1231 (D. Kan. 2010).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[4] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012).

[5] *Id.* (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)).

[6] *Park Univ.*, 442 F.3d at 1244; *Sprint Nextel Corp. v. Middle Man, Inc.*, 2013 WL 5876469, at *2 (D. Kan. Oct. 31, 2013).

### III. Analysis

Blue Cross argues that Helfrich must reimburse Blue Cross because Kansas' anti-reimbursement regulation is preempted by an express provision of the FEHBA that requires reimbursement. Helfrich argues that Blue Cross' motion should be denied and declaratory judgment entered in her favor because the Kansas regulation is not preempted by the FEHBA. Neither party has alleged that there are any material issues of fact that remain to be resolved. Thus, a judgment on the pleadings is appropriate.

Kansas has established a public policy against subrogation clauses in insurance contracts, and this policy includes forbidding clauses that require reimbursement of medical expenses to an insurance company. This policy is codified in the Kansas Administrative Regulations as follows:

> No insurance company or health insurer, as defined in K.S.A. 40-4602 and amendments thereto, may issue any contract or certificate of insurance in Kansas containing a subrogation clause, or any other policy provision having a purpose or effect similar to that of a subrogation clause, applicable to coverages providing for reimbursement of medical, surgical, hospital or funeral expenses.[7]

The FEHBA includes a provision, 5 U.S.C. § 8902(m)(1), that describes when state law is preempted. Under 5 U.S.C. § 8902(m)(1), the terms of a federal employee health insurance contract may preempt state law under the following conditions:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

Here, the health insurance contract between the Office of Personnel Management and Blue Cross and Blue Shield Association contains the following subrogation clause:

---

[7] K.A.R. 40-1-20.

(a) The Carrier's subrogation rights, procedures and policies, including recovery rights, for payments with respect to benefits shall be in accordance with the provisions of the agreed upon brochure text, which is incorporated in this Contract in Appendix A. As the member is obligated by Section 2.3(a) to comply with the terms of this Contract, the Carrier, in its discretion, shall have the right to file suit in federal court in order to enforce those rights.[8]

The contract also includes the following provision for reimbursement: "(d) The Carrier may also recover directly from the Member all amounts received by the Member by suit, settlement, or otherwise from any third party or its insurer, or the Members's insurer under an individual policy or liability insurance, for benefits which have also been paid under this contract."[9]

The Blue Cross and Blue Shield plan brochure contains a section under the heading of "When others are responsible for injuries" and is addressed to federal employees enrolled in the plan as follows:

If another person or entity, through an act or omission, causes you to suffer an injury or illness, and if we paid benefits for that injury or illness, you must agree to the provisions listed below. In addition, if you are injured and no other person or entity is responsible but you receive (or are entitled to) a recovery from another source, and if we paid benefits for the injury, you must agree to the following provisions:

● All recoveries you or your representatives obtain (whether by lawsuit, settlement, insurance or benefit program claims, or otherwise), no matter how described or designated, must be used to reimburse us in full for benefits we paid. Our share of any recovery extends only to the amount of benefits we have paid or will pay to you or your representatives. For purposes of this provision, "you" includes your covered dependants, and "your representatives" include, if applicable, your heirs, administrators, legal representatives, parents (if you are a minor), successors, or assignees. This is our right of recovery.

● We are entitled under our right of recovery to be reimbursed for our benefit payments even if you are not "made whole" for all of your damages in the recoveries that you receive. Our right of recovery is not subject to reduction for attorney's fees and costs under the "common fund" or any other doctrine.

---

[8] Answer, Doc. 6-2, at 13.

[9] Answer, Doc. 6-2, at 24.

● We will not reduce our share of any recovery unless, in the exercise of our discretion, we agree in writing to a reduction (1) because you do not receive the full amount of damages that you claimed or (2) because you had to pay attorneys' fees.

● You must cooperate in doing what is reasonably necessary to assist us with our right of recovery. You must not take any action that may prejudice our right of recovery.

● If you do not seek damages for your illness or injury, you must permit us to initiate recovery on your behalf (including the right to bring suit in your name). This is called subrogation.[10]

Here, the question is whether the terms of the insurance contract preempt the Kansas law prohibiting subrogation and reimbursement.[11] For preemption to apply under the FEHBA, the contract terms must 1) "relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)" and 2) the state law must relate to health insurance or plans.[12] In other words, the contract terms must relate to coverage, relate to benefits, or relate to payments with respect to benefits. If not, then preemption does not apply.

The parties agree that the state law—in this case, K.A.R. 40-1-20—relates to health insurance, so the second requirement for preemption is met. The parties disagree about whether the contract terms relate to coverage or benefits. Blue Cross emphasizes that the contract terms, at least, relate to payments with respect to benefits. Helfrich maintains that there is no preemption under the plain language of the statute, and even if there are two plausible readings of the statute, the presumption against preemption essentially breaks the tie in her favor.

---

[10] Answer, Doc. 6-4, at 128-29 (2012 plan brochure); Answer, Doc. 6-5, at 138-39 (2013 plan brochure).

[11] The Court notes that other courts have expressed concern that the concept of a contractual term having the power to preempt state law may be unconstitutional. *See Empire Healtchoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 143 (2d Cir. 2005). Here, Helfrich does not allege that the statute is unconstitutional, so the Court need not address the issue.

[12] 5 U.S.C. § 8902(m)(1).

Without deciding, the U.S. Supreme Court briefly addressed the issue in *Empire Healthchoice Assurance v. McVeigh*,[13] which concerned whether there was federal-court jurisdiction for a suit for reimbursement initiated by an insurance carrier against an enrollee.[14] In *Empire*, the Court briefly addressed the preemptive powers of 5 U.S.C. § 8902(m)(1) but decided it was not necessary to choose between two plausible constructions to decide the jurisdictional issue.[15] In *Empire*, one of the issues was whether the insurance carrier's claim arose under federal law for federal jurisdiction under § 1331 despite the FEHBA expressly conferring federal jurisdiction only for suits "against the United States."[16] For federal jurisdiction to exist, the insurance carrier's contractual right must be a right that Congress intended to be federal in nature—in other words, a clear intent that the text of the federal law renders inoperative any and all state laws that affect federal employee benefit plans in some way.[17] The Court concluded that there was no federal-court jurisdiction because § 8902(m)(1) does not completely preempt all state laws that could bear on a federal employee benefit plan.[18] In reaching this conclusion, the Court considered whether Congress intended for § 8902(m)(1) to be so broad as to completely displace all ordinarily applicable state law.[19] The Court concluded that it did not.[20]

---

[13] 547 U.S. 677 (2006).

[14] In *Empire*, the U.S. Supreme Court held that a lawsuit filed by a health insurance carrier seeking reimbursement from a beneficiary lacked federal question jurisdiction. *Id.* at 683.

[15] *Id.* at 697-98.

[16] *Id.* at 686, 690-93.

[17] *Id.* at 693-98.

[18] *Id.* at 699.

[19] *Empire,* 547 U.S. at 698.

[20] *Id.*

As part of its analysis, the Court noted that there are two "plausible constructions" of the statute for and against a finding of preemption:

> Section 8902(m)(1) is a puzzling measure, open to more than one construction, and no prior decision seems to us precisely on point. Reading the reimbursement clause in the master OPM-BCBSA contract as a condition or limitation on "benefits" received by a federal employee, the clause could be ranked among "[contract] terms . . . relat[ing] to . . . coverage or benefits" and "payments with respect to benefits," thus falling within § 8902(m)(1)'s compass. On the other hand, a claim for reimbursement ordinarily arises long after "coverage" and "benefits" questions have been resolved, and corresponding "payments with respect to benefits" have been made to care providers or the insured. With that consideration in view, § 8902(m)(1)'s words may be read to refer to contract terms relating to the beneficiary's entitlement (or lack thereof) to Plan payment for certain health-care services he or she has received, and not to terms relating to the carrier's postpayments right to reimbursement.[21]

The Court concluded that there was no need to choose one of the two constructions to answer the question before it because "even if FEHBA's preemption provision reaches contract-based reimbursement claims, that provision is not sufficiently broad to confer federal jurisdiction."[22] In other words, the Court said that the statute could be read to preempt state law but a federal court did not have jurisdiction to do so in that situation. The statute did not expressly confer federal-court jurisdiction and it did not indicate that Congress intended for the statute to completely displace all state laws in this area, which could have been another avenue to jurisdiction. Here, federal-court jurisdiction is based on diversity under 28 U.S.C. § 1332 and is not in question.[23]

---

[21] *Id.* at 697-98 (internal citations omitted).

[22] *Id.* at 698.

[23] Helfrich resides in Kansas, Blue Cross and Blue Shield Association is based in Illinois, Blue Cross and Blue Shield of Kansas City is based in Missouri, and the parties have stipulated that the amount in controversy is $76,561.88. Joint Stipulation Regarding Amendment to Pleadings, Doc. 20.

Before *Empire*, courts consistently held that 5 U.S.C. § 8902(m)(1) preempted state laws that prohibited subrogation or reimbursement.[24] After *Empire*, courts have been split. One federal district court has concluded that preemption exists, retreating from its own contrary conclusion.[25] But two state appellate courts recently held that the statute does not preempt state law.[26] The rationales for finding for or against preemption have varied.

The two state court cases introduced the presumption against preemption as a consideration in choosing the second of *Empire*'s two plausible interpretations, supporting the conclusion against preemption and in favor of state law. In *Nevils v. Group Health Plan, Inc.*,[27] the Missouri Supreme Court noted that when two plausible readings of a statute are possible, a court has the "duty to accept the reading that dis-favors preemption."[28] The Missouri court noted that *Empire* recognized plausible, alternate interpretations and concluded that the presumption against preemption was implicated.[29] But the court ultimately based its decision against preemption on statutory interpretation of the term "relate to," concluding that the term "must be construed as requiring a direct and immediate relationship to the insurance coverage and benefits

---

[24] *See Blue Cross and Blue Shield of Illinois v. Cruz*, 396 F.3d 793, 799 (7th Cir. 2005), *vacated and remanded on jurisdictional grounds*, 548 U.S. 901 (2006); *Medcenters Health Care v. Ochs*, 26 F.3d 865, 867 (8th Cir. 1994); *NALC Health Benefit Plan v. Lunsford*, 879 F. Supp. 760, 763 (E.D. Mich. 1995); *Thurman v. State Farm Mutual Auto. Ins. Co.*, 598 S.E.2d 448, 451 (Ga. 2004); *Aybar v. New Jersey Transit Bus Operations*, 701 A.2d 932, 937 (N.J. Super. Ct. App. Div. 1997); *Buatte v. Gencare Health Sys., Inc.*, 939 S.W.2d 440, 442 (Mo. App. 1996).

[25] *Calingo v. Meridian Res. Co., LLC*, 2013 WL 1250448, at *2, *4 (S.D.N.Y. Feb. 20, 2013) (unpublished).

[26] *Nevils v. Group Health Plan, Inc.*, 418 S.W.3d 451, 457 (Mo. 2014); *Kobold v. Aetna Life Ins. Co.*, 309 P.3d 924, 928 (Ariz. App. 2013), *rev. denied* (Mar. 21, 2014).

[27] 418 S.W.3d 451 (Mo. 2014).

[28] *Id.* at 454 (quoting *Bates v. Dow AgroScience, LLC*, 544 U.S. 431, 449 (2005)).

[29] *Id.* at 454-55.

at issue."[30] The court concluded that the carrier's contingent right to reimbursement bore "no immediate relationship to the nature, provision or extent" of the enrollee's insurance coverage and benefits.[31] As a result, the court held that the FEHBA did not preempt Missouri law.[32] The Arizona Court of Appeals reached the same result using a similar analysis.[33]

### a) Presumption Against Preemption

The Court first addresses the presumption against preemption, which has been a point of contention among members of the U.S. Supreme Court. Recently, four members signed on to a concurring opinion that disavowed the use of the presumption in express preemption provisions, calling the Court's reliance on the presumption "sporadic at best" in the past two decades.[34] In *CTS Corp. v. Waldburger*,[35] the Court summarized the presumption against preemption, noting that it provided "additional support" for its statutory interpretation against preemption:

> "[B]ecause the States are independent sovereigns in our federal system," the Court "'assum[es] that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"
>
> "It follows that "when the text of a preemption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" That approach is "consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety."
>
> "The effect of that presumption is to support, where plausible, "a narrow interpretation" of an express pre-emption provision, especially "when Congress

---

[30] *Id.* at 456.

[31] *Id.* at 457.

[32] *Nevils*, 418 S.W.3d at 457.

[33] *See Kobold*, 309 at 927-28 (concluding that the contract provision created a contingent right to repayment but "bears no immediate relationship to the scope of [the plaintiff's] coverage under the Plan or his receipt of benefits under that coverage").

[34] *See CTS Corp. v. Waldburger*, 134 S.Ct. 2175, 2189 (2014) (Scalia, J., concurring).

[35] 134 S.Ct. 2175.

has legislated in a field traditionally occupied by the States." The presumption has greatest force when Congress legislates in an area traditionally governed by the States' police powers.[36]

The same author, Justice Kennedy, recently expanded on the principle behind the idea that courts ordinarily accept a plausible reading that disfavors preemption:

> This principle is best understood, perhaps, not as a presumption but as a cautionary principle to ensure that pre-emption does not go beyond the strict requirements of the statutory command. The principle has two dimensions: Courts must be careful not to give an unduly broad interpretation to ambiguous or imprecise language Congress uses. And they must confine their opinions to avoid overextending a federal statute's pre-emptive reach. Error on either front may put at risk the validity and effectiveness of laws that Congress did not intend to disturb and that a State has deemed important to its scheme of governance.[37]

The Supreme Court also has emphasized that "the purpose of Congress is the ultimate touchstone in every pre-emption case."[38] Considering these principles, it seems clear that the Court "ordinarily" should accept a plausible reading that avoids preemption. But the presumption against preemption can be overcome if the congressional purpose to preempt state law is clear. In other words, the Court does not have a duty to automatically accept any plausible reading that disfavors preemption. Rather, congressional intent is the ultimate controlling factor. "Congressional intent is discerned primarily from the statutory text."[39]

In *CTS Corp.*, the Supreme Court resolved a preemption issue from the text and structure of a statute.[40] It is instructive that the presumption against preemption was discussed only for

---

[36] *Id.* at 2188 (majority opinion) (internal citations omitted).

[37] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S.Ct. 2247, 2261 (2013) (Kennedy, J., concurring).

[38] *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronics, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

[39] *CTS Corp.*, 134 S.Ct. at 2185.

[40] *Id.* at 2188.

"additional support" in dicta after resolving the issue through a natural reading of the statute.[41]

For this reason, the Court first will attempt to resolve the issue through a natural reading of the

FEHBA to ascertain whether there is clear congressional intent to preempt state law.

### B) Statutory Interpretation

Again, the FEHBA provision at issue is § 8902(m)(1), which reads as follows:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issue thereunder, which relates to health insurance or plans.[42]

Specifically, the issue is whether the reimbursement terms in the contract "relate to the

nature, provision, or extent of coverage or benefits (including payments with respect to

benefits)." Parsing these words to the most relevant terms, the Court examines whether the

reimbursement terms "relate to the . . . extent of . . . payments with respect to benefits." If so,

then the contract terms preempt Kansas state law.

Earlier this year, the U.S. Supreme Court restated its recognition that "the key phrase

'related to' expresses a 'broad pre-emptive purpose.'"[43] The ordinary meaning of "relate to" is a

"broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into

association or connection with.'"[44] The Court also has noted that the words "relate to" have a

"broad scope" and an "expansive sweep" and that the term is "broadly worded," "deliberately

---

[41] *Id.*

[42] 5 U.S.C. § 8902(m)(1).

[43] *Northwest, Inc. v. Ginsberg*, 134 S.Ct. 1422, 1428 (2014) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)).

[44] *Morales*, 504 U.S. at 383 (quoting Black's Law Dictionary 1158 (5th ed. 1979)).

expansive," and "conspicuous for its breadth."[45] In the ERISA context, the Court concluded that a state law "relates to" an employee benefit plan "'if it has a connection with, or reference to, such a plan.'"[46] Under a "broad common-sense meaning," a state law may "relate to" a benefit plan if "the effect is only indirect" or even if the law is not specifically designed to affect such a plan.[47] Courts have noted that "relate to" has the same meaning in the FEHBA context as it does in the ERISA context.[48] Similarly in other contexts, the Court has adopted the "connection with or reference to" standard for identical "relates to" language of other federal statutes.[49]

Likewise, this Court examines whether the contractual reimbursement terms have a connection with or reference to the extent of payments with respect to benefits. Further, "with respect to" is another way of stating "relating to."[50] Taken a step further, the question becomes whether the reimbursement terms have a connection with the extent of payments related to benefits. Notably, the statutory language does not limit "payments" to payments made by the insurance carrier, the implication being that "payments with respect to benefits" may be read to include payments owed by the insured back to the carrier in the form of reimbursement. And because "reimburse" means "to repay," the Court finds that the contractual terms of reimbursement certainly have a connection with the extent of payments related to benefits. Therefore, a natural reading of the statutory language reveals that Congress intended for a

---

[45] *Id.* at 383-84.

[46] *Id.* at 384.

[47] *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990).

[48] *See Blue Cross and Blue Shield of Florida, Inc. v. Dept. of Banking and Fin.*, 791 F.2d 1501, 1504 (11th Cir. 1986) ("We see no meaningful difference on the face of the statute between Congress' use of "relates to" in ERISA and its use of the same words in section 8902(m).").

[49] *See Morales*, 504 U.S. at 384.

[50] The American Heritage Dictionary 1052 (2d. College Ed. 1985).

contract containing terms of reimbursement to preempt state law because, by definition, reimbursement relates to the extent of payment of benefits as required by § 8902(m)(1).

This interpretation is consistent with the majority of courts that have addressed the question.[51] The two state courts that found against preemption did so primarily on the basis that the term "relate to" must be construed as "requiring a direct and immediate relationship" to the insurance coverage or benefits.[52] Under this standard, these courts concluded that the carrier's reimbursement right bears "no immediate relationship" to coverage or benefits.[53] This standard derives from two cases that made the point that there is a limit as to how broadly "relate to" should be construed—that the term could be extended to "the furthest stretch of its indeterminacy" such that anything could "relate to" anything else.[54] But neither of those two cited cases introduced a "direct and immediate relationship" standard.[55] Nor has the U.S. Supreme Court. To the contrary, the U.S. Supreme Court has stated that an indirect effect is enough to show a relationship for preemption purposes.[56] While recognizing that there must be some limit to how far "relate to" should be construed, the Court declines to adopt the narrow

---

[51] *See Cruz*, 396 F.3d at 798 ("An enrollee's reimbursement obligation after recovery from a third party affects the amount of net benefits received from the carrier, so it certainly satisfies the literal definition of being "related to" the extent of coverage or benefits."); *Medcenters Health Care*, 26 F.3d at 867 (affirming holding "that the contract's language was sufficiently clear to require reimbursement"); *NALC Health Benefit Plan*, 879 F. Supp. at 763 ("By definition, the reimbursement provision within this Plan 'relate[s] to the nature or extent of coverage or benefits.'"); *Calingo*, 2013 WL 1250448, at *4 (concluding that "the enforcement of subrogation and reimbursement provisions in FEHBA contracts is integral to the overall administration of benefits plans under the FEHBA, and thus necessarily 'relate to' benefits or coverage for purposes of triggering FEHBA's preemption provision.").

[52] *Nevils*, 418 S.W.3d at 456; *Kobold*, 309 P.3d at 927.

[53] *Nevils*, 418 S.W.3d at 457; *Kobold*, 309 P.3d at 928.

[54] *See Kobold*, 309 P.3d at 927 (citing *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995); *Roach v. Mail Handlers Benefit Plan*, 298 F.3d 847, 849-50 (9th Cir. 2002)).

[55] *See Travelers*, 514 U.S. at 655-56; *Roach*, 298 F.3d at 849-50.

[56] *See Ingersoll-Rand*, 498 U.S. at 139.

-14-

"direct and immediate relationship" standard relied on by the Missouri and Arizona courts. The Court notes that the Tenth Circuit also has construed "relate to" as meaning having "a connection with or reference to" while recognizing that this standard "is not limitless."[57] This reading makes the congressional purpose sufficiently clear to overcome the presumption against preemption.

### c) Congressional Purpose

Ultimately, the cited source of the state courts' "direct and immediate relationship" standard concluded that attempting to measure relations and connections was unhelpful and chose to look instead to the objectives of the federal statute at issue.[58] Here, the congressional purpose behind FEHBA's preemption clause provides additional support for finding in favor of preemption. The U.S. Supreme Court has noted that the purpose of the preemption clause in § 8902(m)(1) is to "ensure uniform coverage and benefits" for federal employees.[59] The aim of the statute was to provide for a uniform, nationwide interpretation of health insurance plans for all federal employees so that issues such as reimbursement would not vary depending on which state the insured lives.[60] Therefore, a finding that Helfrich may keep Blue Cross' payment under Kansas law would frustrate the congressional purpose of nationwide uniformity because another employee under another state's law would be required to reimburse Blue Cross under the same

---

[57] *See Carroll v. Los Alamos Nat. Sec., LLC*, 407 Fed. Appx. 348, 352 (10th Cir. 2011).

[58] *See Travelers*, 514 U.S. at 656 ("We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.").

[59] *See Empire*, 547 U.S. at 686 (citing H.R. Rep. No. 95-282, at 1 (1977)).

[60] *See Weight Loss Healthcare Ctrs. of Am., Inc., v. Office of Pers. Mgmt.*, 655 F.3d 1202, 1206 (10th Cir. 2011) ("Further, not only are the advantages of a uniform, nationwide interpretation of these plans manifest, but the legislative history of FEHBA shows that Congress was motivated by those advantages when it adopted 5 U.S.C. § 8902(m)(1), which preempts the application of state law to the federal plans. Indeed the title of the law adding § 8902(m)(1) to the FEHBA is 'An Act to Amend [the FEHBA] to establish uniformity in Federal employee health benefits and coverage by preempting certain State or local laws which are inconsistent with such contracts, and for other purposes.'").

terms of the contract. Keeping in mind that congressional purpose is the ultimate touchstone in every preemption case, the Court concludes that § 8902(m)(1) preempts Kansas law. As a result, the Court declares that Helfrich must reimburse Blue Cross $76,561.88 and that a lien exists for the same amount against Helfrich's settlement proceeds.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Judgment on the Pleadings (Doc. 21) is hereby **GRANTED**.

**IT IS SO ORDERED**.

Dated this 5th day of August, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE